**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LIMITLESS TOWING & RECOVERY, LLC** | **Case No. _____** |
| *Plaintiff,* | **Judge _____** |
| *v.* | |
| **AmGUARD Insurance Company
39 Public Square
Wilkes-Barre, PA 18703** | |
| and | |
| **Berkshire Hathaway GUARD Insurance
Companies
P.O. Box AH
Wilkes-Barre, PA 18703** | |
| *Defendants.* | |

## COMPLAINT

Plaintiff Limitless Towing & Recovery, LLC ("Limitless" or "Plaintiff"), by and through undersigned counsel, and for its Complaint against Defendants AmGUARD Insurance Company ("AmGUARD") and Berkshire Hathaway GUARD Insurance Companies ("BH GUARD") (collectively, "Defendants"), states as follows:

## PARTIES

1. Limitless is an Ohio limited liability company with its principal place of business in North Ridgeville, Ohio. At all relevant times, Limitless operated a commercial towing and recovery business.

2. AmGUARD is a Pennsylvania corporation authorized to transact insurance business in the State of Ohio and did transact such business within this judicial district. AmGUARD issued the insurance policy at issue and controlled claim handling and payment decisions.

3. BH GUARD, is an insurance enterprise headquartered in Wilkes-Barre, Pennsylvania. BH GUARD markets, underwrites, administers, and financially benefits from insurance policies issued through its subsidiary and affiliated insurers, including AmGUARD.

4. At all relevant times, BH GUARD exercised control over underwriting standards, claims-handling protocols, investigative practices, and financial incentives applicable to AmGUARD claims, including the claim at issue.

5. AmGUARD acted as the agent, instrumentality, and operational arm of BH GUARD in the handling, investigation, delay, and refusal to pay Plaintiff's insurance claim.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendants because they transact insurance business in Ohio, issued and administered insurance policies covering Ohio risks, and committed the acts and omissions giving rise to this action within Ohio.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, the insured risk was located in this District, and Defendants are subject to personal jurisdiction here.

## **FACTUAL ALLEGATIONS**

9. AmGUARD issued a commercial insurance policy to Limitless, Policy No. K2GPS30767 (the "Policy"), effective July 17, 2024 through July 17, 2025, covering commercial auto physical damage, towing and labor, and related business operations. A true and accurate copy of the Policy's declarations and relevant coverage provisions is attached as Exhibit A.

10. The Policy was issued under the BH GUARD enterprise.

11. Plaintiff paid all premiums required under the Policy, including a total annual premium exceeding $100,000, and paid in excess of $400,000 in premiums over the course of their insured relationship with Defendants, without lapse, default, or late payment.

12. Following the January 11, 2025 Loss, Defendants continued to charge and collect insurance premiums on vehicles that had been declared total losses and were no longer operable or insurable, through the remainder of the policy period ending July 17, 2025, despite Defendants' knowledge of the Loss and destruction of those vehicles.

13. At all times relevant, Plaintiff maintained continuous coverage, complied with underwriting requirements, and provided Defendants with full access to financial records, loss history, and business operations. See Exhibit B.

14. On or about January 11, 2025, a fire occurred at or near Plaintiff's business premises in North Ridgeville, Ohio, resulting in the destruction of multiple insured commercial towing vehicles and related property (the "Loss").

15. The destroyed vehicles were scheduled covered autos under the Policy and constituted the core operating assets of Limitless's business.

16. The Loss immediately crippled Plaintiff's ability to operate, as the destroyed vehicles were required to service contracts, generate revenue, and maintain ongoing business obligations.

17. Plaintiff promptly reported the Loss to Defendants and initiated a first-party property claim, which Defendants assigned Claim No. KBAMG25010278.

18. Plaintiff fully complied with all post-loss obligations, including:

    a. Providing sworn statements and recorded information;

    b. Producing financial records, tax information, and loss runs;

    c. Making vehicles and premises available for inspection;

    d. Preserving evidence and cooperating with investigators.

19. At Defendants' direction, Plaintiff refrained from disposing of damaged property and awaited authorization for cleanup and repair.

20. The North Ridgeville Police Department investigated the fire.

21. The sole owner and operator of Limitless, Kyle Kovacs ("Kovacs") was briefly detained during the initial response, his phone was temporarily seized, and he was released the same day without charges.

22. No criminal charges were ever filed against Kovacs or Limitless.

23. Law enforcement never determined that Plaintiff caused or contributed to the fire.

24. Despite this, Defendants repeatedly relied on the mere existence of an "investigation" as justification for nonpayment.

25. Defendants delegated claim handling to North American Risk Services, Inc. ("NARS"), acting as Defendants' claims adjuster and investigator.

4

26. On July 1, 2025, NARS sent a letter stating that coverage was "in dispute" pending investigation, while simultaneously acknowledging that Plaintiff had complied with document requests and inspections. See Exhibit C.

27. NARS represented that it required additional time to investigate despite having already:

   a. Inspected the loss site;

   b. Secured repair estimates;

   c. Reviewed financial records;

   d. Obtained surveillance footage metadata.

28. NARS repeatedly requested documents that Plaintiff had already produced and failed to identify any missing material necessary to determine coverage.

29. Defendants asserted that Plaintiff failed to preserve evidence, even though Defendants had exclusive or superior access to the relevant surveillance system and data.

30. Defendants failed to issue written claim determinations, failed to identify a specific policy exclusion barring coverage, and failed to provide required claim-status updates.

31. Defendants' continued collection of premiums on destroyed vehicles—while simultaneously refusing to pay the claim for those same vehicles—further evidences Defendants' bad faith, lack of reasonable justification, and intent to maximize financial gain at Plaintiff's expense.

32. More than six months after the Loss, Defendants still had not made any payment, partial or otherwise, under the Policy.

33. Defendants' continued reliance on "investigation" was not based on new facts, criminal findings, or policy exclusions, but was instead used as a delay tactic.

34. While awaiting payment, Plaintiff continued to incur expenses, including:

   a. Environmental and hazardous-material cleanup costs;

    b.   Property remediation expenses;

    c.   Storage and security costs;

    d.   Ongoing overhead and debt service; and

    e.   Exposure to regulatory penalties and fines, including potential enforcement action from environmental authorities due to Defendants' refusal to authorize or fund timely cleanup of the Loss.

35. As a direct result of Defendants' delay and refusal to pay or authorize cleanup, Plaintiff was unable to promptly remediate the fire scene, thereby exposing Plaintiff to ongoing environmental risk, regulatory scrutiny, and potential fines or penalties, including those associated with hazardous material conditions remaining at the loss site.

36. Plaintiff paid these expenses out of pocket in reliance on Defendants' obligation to indemnify covered losses.

37. As Defendants delayed, Plaintiff was unable to replace destroyed vehicles, service customers, or maintain revenue streams.

38. Limitless was forced to lay off employees and ultimately shut down Limitless.

39. Additionally, Kovacs personally guaranteed the loans associated with a tow truck and wreckers used in the course of Limitless's business.

40. However, without the revenue from Limitless, the payments on the loans associated with the tow trucks and wreckers have not been paid.

41. In light of the current financial condition of Kovacs and Limitless, Kovacs was denied financing upon seeking a loan to establish another towing company.

42. At no point did Defendants identify a valid, applicable, or unambiguous policy exclusion barring coverage.

43. Defendants never accused Plaintiff of fraud in any formal coverage position.

44. Defendants' delay was not tied to the discovery of new facts but persisted even after all investigative bases had been exhausted.

45. Defendants knew or should have known that continued nonpayment would destroy Plaintiff's business.

46. Defendants nevertheless chose delay over payment as a cost-saving measure.

47. Defendants' conduct constitutes a failure to exercise good faith in the investigation and payment of a valid insurance claim.

### COUNT ONE – BREACH OF CONTRACT

48. Limitless incorporates by reference Paragraphs 1 through 47 of this Complaint as if fully restated herein.

49. The Policy issued to Limitless constitutes a valid and enforceable contract between Limitless and Defendants. *See* Exhibit A.

50. Plaintiff fully performed all conditions precedent under the Policy, including timely notice of loss, cooperation with investigation, preservation of evidence, and production of financial and operational records. *See* Exhibits B–C.

51. The January 11, 2025 fire loss constitutes a covered "loss" under the Policy, and the destroyed vehicles were scheduled covered autos.

52. Defendants materially breached the Policy by failing and refusing to pay covered losses, failing to issue a timely coverage determination, and failing to indemnify Limitless for damages expressly insured under the Policy.

53. Defendants' breach was not justified by any policy exclusion, condition, or limitation, none of which Defendants ever identified in a written coverage position. *See* Exhibit C.

54. BH GUARD is liable for breach of contract because it issued, administered, controlled, and financially benefited from the Policy and the claim-handling decisions at issue, acting jointly with and through AmGUARD.

55. As a direct and proximate result of Defendants' breach, Limitless suffered damages including unpaid policy benefits, consequential losses, lost business value, and out-of-pocket expenses in excess of $75,000, the precise amount to be proven at trial.

## COUNT TWO – INSURANCE BAD FAITH

56. Plaintiff incorporate by reference Paragraphs 1 through 47 as if fully restated herein.

57. Under Ohio law, insurers owe their insureds a duty to act in good faith in the investigation, evaluation, and payment of claims.

58. Defendants breached that duty by, among other things:

   a. Treating Plaintiff's claim as presumptively fraudulent without evidence;

   b. Delaying payment based on an "investigation" that yielded no criminal charges or coverage defenses;

   c. Withholding and selectively relying on surveillance evidence;

   d. Failing to issue timely or meaningful coverage determinations;

   e. Repeatedly requesting duplicative documents already produced; and

   f. Continuing to charge and collect insurance premiums on vehicles known to be total losses while refusing to pay the claim for those same vehicles.

59. Defendants lacked any reasonable justification for delaying or denying Plaintiff's claim,

60. Defendants knew or should have known that continued nonpayment would cause catastrophic harm to Plaintiff's business and livelihood, yet consciously chose delay over payment.

8

61. Defendants' conduct was willful, wanton, reckless, and undertaken with conscious disregard for Plaintiff's rights.

62. As a direct and proximate result of Defendants' bad faith, Plaintiff suffered additional damages beyond contract benefits, including business collapse, reputational harm, litigation-related losses.

63. Plaintiff is entitled to compensatory damages, punitive damages, and attorney's fees as permitted by Ohio law.

## COUNT III – DECLARATORY JUDGMENT

64. Limitless incorporates by reference Paragraphs 1 through 47 as if fully restated herein.

65. An actual, present, and justiciable controversy exists between the parties concerning Defendants' obligations under the Policy.

66. Limitless contends that the January 11, 2025 fire loss is a covered loss under the Policy and that Defendants are obligated to indemnify Limitless for all covered damages.

67. Defendants dispute or have refused to acknowledge that obligation, thereby creating uncertainty regarding Plaintiff's rights under the Policy.

68. Limitless seeks a declaration that coverage exists for the Loss and that Defendants are obligated to pay all benefits due under the Policy, including:

  a. Unpaid insurance benefits due under the Policy;

  b. Consequential and incidental damages resulting from delayed payment;

  c. Lost profits and destruction of business value;

  d. Out-of-pocket remediation, cleanup, compliance expenses, and exposure to regulatory penalties and environmental enforcement costs;

  e. and

f.   Attorney's fees, costs, and litigation expenses.

## DEMAND FOR RELIEF

WHEREFORE, Limitless requests judgment against Defendants AmGUARD Insurance

Company and Berkshire Hathaway GUARD Insurance Companies as follows:

A.  An award of compensatory damages in an amount to be proven at trial;

B.  An award of consequential and incidental damages;

C.  An award of punitive damages sufficient to punish and deter Defendants' misconduct;

D.  An award of reasonable attorney's fees, costs, and litigation expenses;

E.  Pre-judgment and post-judgment interest as permitted by law;

F.  Declaratory relief confirming coverage and Defendants' payment obligations; and

G.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. 38, Plaintiff demands a trial by jury as to all claims so triable.

Respectfully submitted,
BETRAS KOPP, LLC.

*/s/David J. Betras*
DAVID J. BETRAS (00305754)
JAMES N. MELFI (0098986)
FRANK L. CASSESE (0092991)
6630 Seville Dr.
Canfield, Ohio 44406
T: (330) 746-8484
F: (330) 702-8280 (fax)
dbetras@bk-laws.com
jmelfi@bk-laws.com
flcassese@bk-laws.com
*Counsel for Plaintiff*